UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **JUAN M. VALDIVIA CRUZ,** | ) |
| Plaintiff, | ) Case No. SACV 13-1617 AJW |
| v. | ) MEMORANDUM OF DECISION |
| **CAROLYN W. COLVIN,** **Acting Commissioner of the Social Security Administration,** | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and Supplemental Security Income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to the disputed issue(s).

**Administrative Proceedings**

In May 2011, plaintiff filed his applications for benefits alleging that he had been disabled since February 26, 2010, the date of a final decision denying plaintiff's prior application for benefits. Plaintiff alleged disability due to brittle diabetes, depression, hypertension, cardiovascular disease, and high cholesterol.[1] [JS 2; Administrative Record ("AR") 14, 18, 93-98, 115, 124, 199]. In a written hearing

---

[1] The prior, final determination that plaintiff was not disabled through February 26, 2010 creates a rebuttable presumption that plaintiff retained the ability to work after that date. See Schneider v.

1  decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the
2  "ALJ") found that plaintiff had severe impairments consisting of diabetes mellitus, neuropathy, mood
3  disorder not otherwise specified with some anxiety features, and somatoform syndrome. [AR 16]. The ALJ
4  further found that plaintiff retained the residual functional capacity ("RFC") to perform the exertional
5  requirements of medium work, with nonexertional limitations restricting him to moderately complex tasks,
6  no highly fast-paced work, and no safety-related operations. [AR 17]. The ALJ determined that plaintiff's
7  RFC did not preclude him from performing his past relevant work as a sanitation worker. [AR 23].
8  Therefore, the ALJ found plaintiff not disabled at any time through the date of his decision. [AR 23-24].

**Standard of Review**

10  The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial
11  evidence or is based on legal error. Stout v. Comm'r, Social Sec.Admin., 454 F.3d 1050, 1054 (9th Cir.
12  2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than
13  a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.
14  2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
15  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is
16  required to review the record as a whole and to consider evidence detracting from the decision as well as
17  evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco
18  v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational
19  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas,
20  278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Credibility finding**

23  Plaintiff contends that the ALJ improperly assessed plaintiff's subjective symptom testimony. [JS

---

Comm'r of Social Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Lyle v. Sec'y of Health & Human Servs., 700 F.2d 566, 567 (9th Cir. 1983). This presumption of "continuing non-disability" may be overcome by a showing of "changed circumstances," by new facts establishing a previously unlitigated impairment or other apparent error in the prior determination, or where the claimant's unrepresented status has resulted in an inadequate record. Lester v. Chater, 81 F.3d 821, 827-828 (9th Cir. 1995); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988).

1  5-15, 19].

2       Plaintiff was represented by counsel during the administrative hearing and testified with the
3  assistance of a Spanish language interpreter. [AR 14, 63-34]. Plaintiff testified that his subjective symptoms
4  included "buzzing" in his head and feeling "very confused," and that when he remains seated for 45 minutes
5  to an hour, his legs start "hurting and burning." [AR 75]. Plaintiff said that he lived with his sister, who was
6  a "housewife." [AR 75]. Asked to describe a normal day, plaintiff said that he got up, walked a bit, went
7  to the park "to try to distract" himself, but then felt sad and returned home. [AR 76]. Plaintiff testified that
8  he had "trouble sleeping because I'm constantly getting up to urinate. So during the day a lot of times I will
9  fall asleep." [AR 76]. Plaintiff said that he had a driver's license but "never" drove at night and drove
10 during the day only when necessary. [AR 76]. He said that he did not watch television much because things
11 he saw on television made him worry about life. He said that "everything worries me. Insignificant things."
12 He explained that he was "constantly worried about life without really knowing what I am worried about."
13 [AR 76, 78]. Plaintiff said that when he was well, he "was a very happy person, but now I'm not sociable
14 at all," and that he felt "sadness," "confusion in life," and did not "see any fun in life anymore." [AR 77].
15 He had "considered committing suicide," but daily therapy appointments at a hospital helped with his
16 suicidal thoughts. [AR 77-78].

17      Asked why he could not work, plaintiff gave three reasons. First, he said that "if it's a job that
18 requires me to concentrate in what I'm doing, I cannot concentrate." [AR 77]. Second, he said that "if I have
19 to remain standing, I can't do that, because in no time at all, my legs start bothering me and my [right] arm
20 . . . I feel like it's burning." [AR 77]. Third, plaintiff said that "If I'm taking any liquids, I have to go to the
21 bathroom, like, every 45 minutes. And I can't wait. When I have to go, I have to go right now." [AR 77].

22      Regarding his leg pain, plaintiff testified that when he was on his feet, his heels started hurting, and
23 the soles of his feet felt like he was standing on "hot concrete." [AR 78]. Plaintiff said that when he was in
24 bed at night, he was unable to keep my feet under the blanket unless he had a fan blowing on them, because
25 he felt like his feet were burning. [AR 78]. Plaintiff testified that he had trouble lifting heavy things and
26 did not have the energy he used to have, and that if he had do so "consecutively," he could not lift more than
27 10 pounds and not for too long. [AR 79].

28      In a written disability report, plaintiff stated that his daily activities included walking around, doing

exercise, watching television, visiting friends, going to church, and visiting his sons. [JS 5; AR 227, 231]. Plaintiff said that he did not have problems with personal care, except that he needed to be reminded to take his medicine. [AR 228-229]. Plaintiff reported that he spent 20 to 30 minutes daily preparing salads, sandwiches, roasted chicken, and fruit for himself. He also said that he spent two hours twice a week sweeping, cleaning his room, doing laundry, and washing the restroom. [AR 229]. Plaintiff indicated that he went out every day unassisted, and that got around by walking, using public transportation, or riding a bike. He said that he did not drive because he sometimes felt confused and could not think clearly. [AR 230]. He also reported that he spent up to two hours shopping from once a week to once a month. [AR 230]. Plaintiff said that his social activities included talking with others and watching sports with others every two weeks, and that he went to church, to visit his sons or his friends, and to the mall. He said that he had no problems getting along with others. [AR 231-232]. Plaintiff reported that he could walk a mile, then needed to rest for 15 minutes before resuming walking. He said that he could concentrate for 10-15 minutes, generally could finish tasks he started, did not follow written or spoken instructions too well, did not handle stress well, handled changes in routine "okay," and was more fearful than he used to be. [AR 233].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of the claimant's subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony she considers not credible, she must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the claimant's subjective testimony without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

1    In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c) (3), 416.929(c)(3); see also Social Security Ruling 96–7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

In his decision, the ALJ wrote that plaintiff alleged that "he cannot work due to diabetes, hypertension, cardiovascular disease, high cholesterol, and depression. At the hearing, he alleged he could not concentrate, could not stand long, he felt burning in his right arm, and he frequently had to use the restroom." [AR 18].

The ALJ concluded that plaintiff's subjective complaints were not credible to the extent that they were inconsistent with his RFC finding. [AR 18]. In support of that finding, the ALJ first summarized plaintiff's medical records and concluded that the objective medical evidence did not corroborate the alleged severity of plaintiff's subjective complaints. In particular, the ALJ cited the Commissioner's consultative internal medicine and psychiatric examination reports and treating source records from Dr. Lopez and Navarro, and he reasonably concluded that the relatively normal examination findings contained in those reports did not support plaintiff's subjective allegations of disabling pain and functional limitations. [See AR 18-22, 256-286, 287-292, 300-303, 329-360]. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider

1 in his credibility analysis."). The ALJ noted that another treating physician, Dr. Aungkhin, opined that
2 plaintiff had "moderate physical limitations, severe memory recall and intellectual functioning" that
3 precluded plaintiff from meeting the standing, sitting, and walking requirements of even sedentary work,
4 but the ALJ rejected that opinion in favor of the examining and non-examining source opinions, and plaintiff
5 does not challenge that finding. [See AR 22-23].

6       The ALJ concluded that additional factors detracted from plaintiff's credibility. First, the ALJ
7 pointed to inconsistencies within plaintiff's testimony, or between that testimony and other evidence in the
8 record. [AR 22]. During the hearing plaintiff said that he spoke English only "[a] little bit," and he testified
9 with the assistance of a Spanish language interpreter during the hearing. [AR 67]. Plaintiff, however, did
10 not use an interpreter during his two consultative examinations or during his prior administrative hearing.[2]
11 [AR 22]. Furthermore, as plaintiff acknowledges, he stated on his disability report that he can speak, read,
12 and understand English. [JS 8; AR 198].

13       The ALJ also pointed to inconsistencies within plaintiff's testimony about how long he had been
14 seeing Dr. Aungkhin. Plaintiff twice stated that he had been seeing Dr. Aungkhin for "approximately two
15 years." [AR 79, 80]. Then, when the ALJ asked if he had first seen Dr. Aungkhin in 2006 as indicated in
16 a medical report, plaintiff replied "yes" and explained that he tried to see Dr. Aungkhin because he was a
17 "very good doctor." [AR 80]. Asked whether he had been seeing Dr. Aungkhin "for two years or since
18 2006," plaintiff replied, "I really don't remember the dates of when I started seeing him[.]" [AR 80]. The
19 last inconsistency the ALJ noted was that plaintiff said in a disability report that he could no longer drive
20 due to his medical condition [AR 228, 230], but he testified during the hearing that he had a driver's license
21 and drove during the day when necessary. [AR 76]. The ALJ did not err in concluding that these
22 inconsistencies, viewed as a whole, detracted from plaintiff's credibility. See Tonapetyan, 242 F.3d at 1148

---

[2] Plaintiff argues that no inference can be drawn about use of interpreter during the prior hearing because the transcript of that hearing is not in the record. [JS 8]. The prior hearing decision is in the record, however, and it states that plaintiff appeared and testified during the hearing, and that a medical expert and a vocational expert also appeared and testified. [AR 93]. Absent any evidence that an interpreter was used, the lack of reference to an interpreter in the prior hearing decision creates a reasonable inference that plaintiff testified without using one.

("[T]he ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.") (internal quotation marks omitted).

Second, the ALJ found that plaintiff "engaged in a somewhat normal level of daily activity and interaction," in that plaintiff "admitted . . . taking care of his own personal hygiene and grooming, visiting friends and his sons, going to church, making his own meals, and doing household chores," walked daily, rode a bicycle for exercise, spent time with others, and had no problems getting along with others. [AR 22]. The ALJ reasonably inferred that plaintiff's admitted ability to perform a fairly wide range of routine daily activities independently and without reporting significant interference or ill-effects from his allegedly disabling symptoms was one factor, among others, that justified rejecting the alleged severity of his subjective symptoms. See Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (holding that the ALJ permissibly concluded that while the claimant's activities did not show that he could return to his past job, they suggested a higher level of functioning than portrayed in the claimant's subjective testimony); Burch, 400 F.3d at 679 (holding that the ALJ did not err in finding that the claimant's ability to care for her own personal needs, cook, clean, shop, interact with family, and manage her finances suggested that the claimant "was quite functional" and undermined her credibility).

Accordingly, the ALJ articulated specific, clear, and convincing reasons supporting his adverse credibility finding.

**Step four finding**

Plaintiff contends that the ALJ failed properly to develop the record at step four with respect to the medical expert's testimony and the nature and demands of the past relevant job of "sanitation worker." [JS 15-20].

The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even where, as here, "the claimant is represented by counsel." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). A claimant, however, retains the burden of proving that he is disabled. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).

Plaintiff argues that portions of the medical expert's testimony in which he listed plaintiff's specific mental impairments was transcribed as "inaudible." [JS 15; AR 68)]. A few words in that portion of the transcript were inaudible. However, the medical expert noted that his testimony was consistent with the November 2011 consultative psychiatrist's report, and that report indicates that the first impairment the medical expert identified was mood disorder not otherwise specified with some anxiety features, and the second was psychological reactions to physical conditions.[3] [AR 68-69, 302]. Therefore, no genuine ambiguity exists as to the specific impairments identified by the medical expert. Furthermore, the portion of the medical expert's testimony in which he assessed plaintiff's mental RFC was fully audible. [AR 68-69]. See Mayes, 276 F.3d at 459-460 (noting that the ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence").

Plaintiff also argues that the ALJ relied on evidence that is not in the record to find that plaintiff has past relevant work as a "sanitation worker," Dictionary of Occupational Titles ("DOT") job number 381.687-018. [JS 16]. That argument lacks merit.

A claimant is "not disabled" if he retains the residual functional capacity to perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *2; see also Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) ("The claimant has the burden of proving an inability to return to his former type of work and not just to his former job."). Information from the DOT, or the testimony of a vocational specialist, may be used to ascertain the demands of an occupation as ordinarily required by employers throughout the national economy. SSR 82-61, 1982 WL 31387, at *2; Villa, 797 F.2d at 798.

---

[3] Plaintiff notes that the consultative psychiatrist who authored that report, Dr. Singer, did not review plaintiff's medical records. If that is an attempt to discredit Dr. Singer's conclusions or the medical expert's reliance on his report, it lacks merit. An examining physician's opinion that is based on independent clinical findings may constitute substantial evidence irrespective of whether or not medical records were reviewed. See Tonapetyan, 242 F.3d at 1149.

1        During the hearing, the vocational expert testified that plaintiff had past relevant work as a
2   "sanitation worker," and that the hypothetical individual described by the ALJ in his first two hypothetical
3   questions could perform the job "per the DOT," but not as plaintiff performed it. [AR 81-84].  The
4   vocational expert did not identify the DOT job number for "sanitation worker" in her oral testimony,
5   apparently because she had provided the ALJ with a "work summary form" containing that information, and
6   the ALJ simply asked her whether the information on that form was correct. [See AR 81-82].  The
7   vocational expert's work summary form is not in the record,[4] but the ALJ stated in his decision states that
8   he "accepts the vocational expert's classification of the claimant's past relevant work as . . . sanitation
9   worker (DOT No. 381.687-018, unskilled SVP 2, medium)." [AR 98].  Therefore, it is apparent that the ALJ
10  relied on the vocational expert's testimony to classify plaintiff's past relevant work as a sanitation worker,
11  DOT job number 381.687-018, which is titled "cleaner, industrial" and is a medium job with an SVP
12  (Specific Vocational Preparation) of 2.

13       Plaintiff further contends that the medical expert testified that plaintiff was limited to three- to five-
14  step tasks [AR 71, 73], and that the ALJ never asked the vocational expert if plaintiff's past work as a
15  sanitation worker required more than five steps. [JS 16].

16       The medical expert testified that plaintiff was limited to "moderately complex" tasks, which he
17  defined as "more than two steps" and could easily include "three to five steps." [AR 69, 71].  The DOT job
18  of sanitation worker has an SVP of two and a reasoning level of two.  An SVP of one or two corresponds
19  to unskilled work.  DOT, Appendix C, "Components of the Definition Trailer" (4th ed. 1991); Terry v.
20  Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990); SSR 83-10, WL 31251, at *7.  A reasoning level of two
21  requires the ability to use "common sense" to comply with "detailed but uninvolved
22  instructions" and is consistent with the ability to perform simple one- and two-step, SVP level
23  two jobs such as the DOT job of sanitation worker. See DOT, Appendix C, "Components of the
24  Definition Trailer" (4th ed. 1991);  Meissl v. Barnhart, 403 F. Supp. 2d 981, 982-984 (C.D. Cal.
25  2005) (holding that a claimant who was limited to "simple tasks performed at a routine or

---

27    [4]  Defendant references a work history form completed by plaintiff stating that he worked
28  in the "Sanitation Department" at Albertson's Bakery from 1989 until 2001 [AR 253], but that does not appear to be the form that the ALJ and the vocational expert were referring to.

1  repetitive pace" was not precluded from performing an unskilled past job with a DOT reasoning
2  level of 2). Therefore, plaintiff's RFC for "moderately complex," three- to five-step tasks
3  comprehends the ability to perform the DOT job of sanitation worker, and there was no error
4  by the ALJ at step four.

///

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Therefore, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

August 11, 2014

_____
ANDREW J. WISTRICH
United States Magistrate Judge